# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**LEON R. KOZIOL,** individually
and as natural parent of Child A
and Child B,

     **Plaintiff,**     **6:14-cv-946**
                 **(GLS/TWD)**

   **v.**

**DANIEL KING et al.,**

     **Defendants.**

_____

**APPEARANCES:**     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Leon R. Koziol
Pro Se
1336 Graffenburg Road
New Hartford, NY 13413

**FOR THE DEFENDANTS:**
*Daniel King*; *James Gorman*; *James
Tormey*; *Robert Rose*; *John Lahtinen*;
*Edward Spain*; *Leslie Stein*; *Monica
Duffy*; *Steven Zayas*; *John Centra*
HON. ERIC T. SCHNEIDERMAN   JUSTIN L. ENGEL
New York State Attorney General   Assistant Attorney General
The Capitol
Albany, NY 12224

*Nicole Christensen*
Schmitt & Lascurettes, LLC    WILLIAM P. SCHMITT, ESQ.
1508 Genersee Street, Suite 3
Utica, NY 13502
*Kelly Hawse-Koziol*

Pro Se
16 Terrace Hill Drive
New Hartford, NY 13413

*William Koslosky*
Costello, Cooney Law Firm        PAUL G. FERRARA, ESQ.
500 Plum Street
Suite 300
Syracuse, NY 13204

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I. <u>Introduction</u>

Plaintiff *pro se* Leon R. Koziol commenced this action against

defendants Daniel King, James Gorman, James Tormey, Robert Rose,

John Lahtinen, Edward Spain, Leslie Stein, Monica Duffy, Steven Zayas,

John Centra, (collectively, "State Defendants"), Nicole Christensen,

defendant *pro se* Kelly Hawse-Koziol, and William Koslosky, pursuant to

42 U.S.C. § 1983, alleging violations of his First, Fourth, Ninth, and

Fourteenth Amendment rights, and also asserting a claim of *prima facie*

tort under New York common law.[1]  (Compl., Dkt. No. 1.)  Pending are

State Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

_____

[1] Soon after filing his complaint, Koziol sought a temporary restraining order by order to show cause, (Dkt. No. 6), which the court denied, (Dkt. No. 7).

and 12(b)(6), (Dkt. No. 23), Koslosky's motions for summary judgment, (Dkt. No. 25), and for sanctions pursuant to Fed. R. Civ. P. 11, (Dkt. No. 27), Christensen's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (Dkt. No. 36), Hawse-Koziol's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (Dkt. No. 39), and Koziol's cross motion for disqualification of the court and a preliminary injunction, (Dkt. No. 41).  For the reasons that follow, each of defendants' motions are granted, Koziol's cross motion is denied, and his complaint is dismissed.

## II.  **Background**[2]

Koziol is a suspended attorney and "parental advocate . . . seeking to reform th[e] child rearing system."  (Compl. ¶¶ 6, 58, 60, 66.)  Endeavoring to comprehend his verbose, disjointed, and vitriolic complaint has been, to use Koziol's own words, "a chaotic ordeal."  (Dkt. No. 45, Attach. 1 ¶ 14.) Nonetheless, the court has waded through all 179 paragraphs, and, after a painstaking review, has gleaned that Koziol's gripes derive from two general sources: (1) divorce, child custody, and chid support proceedings

---

[2] Although the court appreciates that different standards are used in presenting facts on motions to dismiss and motions for summary judgment, because all of Koziol's claims can be dismissed based on pleading deficiencies, the facts recited are drawn from Koziol's complaint, and presented in the light most favorable to him.

in New York Family Court, throughout which various judges have continuously and systematically violated myriad constitutional rights; and (2) state court decisions suspending him from the practice of law in New York, and the various investigations prior and subsequent to those decisions. (*See generally* Compl.)

Thus, in this case—his fourth filed in the Northern District of New York[3]—Koziol names as defendants eight New York state judges, two former members of New York's Committee on Professional Standards (COPS), a court-appointed Attorney for the Child, a supervisor for the Oneida County Support Collection Unit, and his ex-wife. (*Id.*) Against each of these defendants, he asserts a veritable potpourri of constitutional and state law infractions: violations of his Fourteenth Amendment

---

[3] Notably, Koziol has filed three prior lawsuits in this District, and in each, he alleged similar claims against many of the same defendants named here. Each of those cases were dismissed, and attorneys' fees were awarded in one. *See Koziol v. Peters*, No. 12-CV-823, 2012 WL 4854589, at *1, *10-11 (N.D.N.Y. Oct. 11, 2012) (dismissing complaint in which claims arose "from his custody and child support proceedings in New York state court, his subsequent suspension from the practice of law, and his current inability to cure his suspension," and were asserted against, among other defendants, Rose, Lahtinen, Spain, Stein, Koslosky, Duffy, and Zayas, and characterizing Koziol's complaint as "rambling, disjointed, and nearly incomprehensible"); *Koziol v. Peters*, No. 6:12-CV-823, 2012 WL 5986574, at *2-3 (N.D.N.Y. Nov. 29, 2012) (granting the defendant City of Utica's motion for attorneys' fees and describing the claims asserted in the complaint as "without legal foundation, and . . . baseless"); *Parent v. New York*, 786 F. Supp. 2d 516, 544-45 (N.D.N.Y. 2011) (dismissing lead case, along with member case—Koziol's third case filed in this District, No. 6:10-CV-1361—in which Koziol sued, among other defendants, all of the Justices of the Appellate Division, Fourth Department, the entire Fifth Judicial District Grievance Committee, Hawse-Koziol, and Koslosky), *aff'd* 485 F. App'x 500 (2d Cir. 2012).

substantive and procedural due process and equal protection rights, Fourth, Ninth, and Tenth Amendment "parental privacy" rights, First Amendment "free speech, free press, free religion, free association and judicial access" rights, and state tort law.  (*Id.* ¶¶ 154-68, 174-75.)  He also seeks declaratory and injunctive relief in the form of the following: (1) "[a] permanent inunction . . . upon interacting processes challenged by this action and on custody/support orders and license suspensions issued"; (2) "[a] judgment declaring unconstitutional Section 240(1) of the New York Domestic Relations Law, the parental classifications enforced in New York, and a practice of censoring out-of-court criticisms"; (3) "[a] judgment declaring unconstitutional Section 8.4(d) and (h) of the New York Attorney Rules of Conduct and the terms of suspension upon [him] which prohibit opinions and employment related to the law in undefined and wide ranging contexts"; and (4) "[o]rders restoring [his] law license in this [c]ourt,[4] sealing the records and parenting time sufficient to overcome child alienations."  (*Id.* at 30.)

---

[4] With respect to Koziol's request to restore his law license in the Northern District, the court, at the outset, denies this relief.  This District's Local Rule 83.4(d) sets forth the appropriate procedure by which an attorney may seek to modify an order of discipline.  Koziol has not complied with that procedure.

Below, to the extent possible, the court attempts to set forth the relevant facts pertaining to each defendant.

## A.  **State Defendants**

### 1.  *Judge King*

Judge King is a County Court judge in Lewis County, New York, and, beginning in 2013, presided over Koziol's Family Court matters.  (*Id.* ¶¶ 19, 108.)  Specifically, Koziol alleges that, in July 2013, his ex-wife, Hawse-Koziol, filed "specious petitions," and, subsequently, Judge King issued several "bad faith orders," that, among other things, restricted Koziol's alcohol consumption during visits with his children and limited the geographic area in which he could travel with them.  (*Id.* ¶¶ 108-12, 115.)

Koziol further alleges that Judge King imposed additional restrictions on him when he sought to take his children to an out-of-town wedding.  (*Id.* ¶¶ 119-20.)  These restrictions included requiring separate lodging for Koziol's children and fiancée and prohibiting alcohol consumption.  (*Id.*)  After the wedding, Judge King "ordered [Koziol] to answer violation charges," apparently because Hawse-Koziol alleged that Koziol had violated the visitation conditions established by Judge King.  (*Id.* ¶¶ 121-26.)  Thereafter, Koziol claims that Judge King suspended his parenting

6

time, but that decision was later reversed by the Appellate Division.  (*Id.* ¶¶ 126-28.)  Later, "in a decision received on Christmas Eve," Judge King "defied the higher court order" and issued "more punitive orders . . . solely to discredit [Koziol]'s public criticisms monitored outside of court," presumably on his website.  (*Id.* ¶¶ 127-28.)  Finally, Koziol alleges that, in January 2014, Judge King conducted a hearing in "contempt of a higher court order," during which he "falsely accus[ed Koziol] of objecting to entire testimony," "directed [Koziol] to 'be quiet' or be 'removed' from the court," "facilitated false testimony," and generally converted the proceedings "to a father-bashing session infected by rumor and innuendo."  (*Id.* ¶¶ 130-37.)

### 2.    Magistrate Gorman

Magistrate Gorman is a Support Magistrate for Onondaga County, and, in 2012, was assigned to Koziol's "child rearing matters."  (*Id.* ¶¶ 20, 95-96.)  Koziol alleges that, after he "secured a position projected to satisfy accumulating support arrears," Hawse-Koziol "refused [to] cooperat[e]," which "forc[ed Koziol] to file for [a] downward adjustment."  (*Id.* ¶ 95.) Thereafter, Magistrate Gorman "issued a later conceded unlawful order with minor temporary relief that failed to advance [Koziol]'s long term goals."  (*Id.* ¶ 96.)  Magistrate Gorman also appointed Koslosky to

represent Koziol's children in support proceedings.  (*Id.* ¶¶ 101, 105.)

Additionally, in April 2013, Koziol published a twenty-five page complaint

on his website, which was critical of the "inordinate delays and employment

injury caused by Magistrate Gorman," and, ten days later, Magistrate

Gorman "issued a four month late decision which reversed his unlawful

order, imposed lawyer fees contrary to record commitments, imputed

income based on a fabricated PhD, and hiked support obligations to

unmanageable levels."  (*Id.* ¶¶ 103-04.)

2.     *Judge Tormey*

Judge Tormey is the Administrative Judge for the Fifth Judicial

District.  (*Id.* ¶ 21.)  In this role, Judge Tormey assigned certain judges to

Koziol's various family law matters, who then often issued decisions and

orders unfavorable to Koziol.  (*Id.* ¶¶ 82, 138.)

3.     *Justices Rose, Lahtinen, Spain, and Stein*

At the time Koziol filed his complaint, Justices Rose, Lahtinen, Spain,

and Stein[5] were Justices of the Supreme Court, Appellate Division, Third

Judicial Department.  (*Id.* ¶ 22.)  These defendants are each named only

_____

[5] Justice Stein has since been appointed to the New York Court of Appeals.  For the
sake of consistency, the court will refer to her as "Justice" Stein throughout this opinion.

8

once in Koziol's complaint.  (*Id.*)  Koziol has completely failed to provide any factual background elucidating why he has named these individuals as defendants.[6]

### 4.    *Justice Centra*

Justice Centra is a Justice of the Supreme Court, Appellate Division, Fourth Judicial Department.  (*Id.* ¶ 26.)  Koziol alleges that, in January 2008, Justice Centra presided over his application for a stay of his divorce and child custody and support proceedings.  (*Id.* ¶¶ 1-5, 31-38.)  Koziol further alleges that, around the same time, an "ethics prosecution" was commenced against him, and Justice Centra "directed" the prosecution "using means outside of established channels and judicial scope."  (*Id.* ¶¶ 40-41.)  According to Koziol, Justice Centra "was offended by [Koziol]'s criticisms," and the purpose of the prosecution "was not designed to further any legitimate ethics objective but to make an example of [Koziol] by suppressing his accurate criticisms of Family Court and discouraging long overdue reform."  (*Id.* ¶¶ 41-44.)

---

[6]  While the court can surmise that these Justices are named as defendants because they issued decisions unfavorable to Koziol in his disciplinary proceedings, *see In re Koziol*, 107 A.D.3d 1137 (3d Dep't 2013); *In re Koziol*, 76 A.D.3d 1136 (3d Dep't 2010), it is not the court's duty to unearth facts outside of the pleadings, nor is it even appropriate for the court to do so.

*5.    Zayas and Duffy*

Zayas is a former member of COPS, and Duffy is the former chairperson and current chief counsel.  (*Id.* ¶¶ 23-24.)  Koziol claims that Zayas and Duffy authorized and led "inquiries" of him and submitted a "'secret' report" opposing his reinstatement to the bar.  (*Id.* ¶¶ 69, 143-44, 146, 150.)

## B.    <u>Christensen</u>

Christensen is a supervisor for the Oneida County Support Collection Unit and is assigned to Koziol's income and asset executions.  (*Id.* ¶ 25.)  Although far from clear, Koziol appears to allege that Christensen aided Hawse-Koziol in "impair[ing] driving and employment liberties," "pursuant to an unlawful [support] intercept to enforce private debts."  (*Id.* ¶¶ 98, 100.)

## C.    <u>Koslosky</u>

Koslosky was appointed Attorney for the Child for Koziol's two children, and, in that role, he "harmed the long term interests of [the children]."  (*Id.* ¶ 28.)  Koziol further claims that Koslosky fabricated and submitted a sworn statement "claiming that [Koziol] had sought reinstatement of his law license in Onondaga Family Court in a scam to fabricate lawyer incompetence" and, together with Hawse-Koziol, "lodged

false claims . . . that [Koziol] had arranged a kidnapping plot in Rio de Janeiro." (*Id.* ¶¶ 71-72, 76-77.) Koziol also alleges that, in July 2013, Koslosky, again with Hawse-Koziol, filed a "round of specious petitions." (*Id.* ¶ 108.)

## D.  **Hawse-Koziol**

Hawse-Koziol is Koziol's ex-wife and the mother of his two children. (*Id.* ¶¶ 27, 32, 37.) Koziol claims that Hawse-Koziol "issued an ultimatum which called for a surrender of parenting rights in exchange for an end to child support so that a wealthy, childless substitute could father [Koziol]'s daughters," "abuse[d] joint custody rights by orchestrating a series of career damaging petitions," filed "false claims," "motions for contempt," and "specious petitions" against Koziol in Family Court—which resulted in added visitation restrictions, "injury to [Koziol]'s livelihood," and a general loss of parenting rights—and "impair[ed Koziol's] driving and employment liberties" with the aid of Christensen. (*Id.* ¶¶ 35-36, 76, 82, 89, 91-92, 94-95, 98, 100, 108-13, 115-16, 137.)

## III.  **Standard of Review**

The standards of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical," *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128

(2d Cir. 2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.*, 798 F. Supp. 2d 409, 410 (N.D.N.Y. 2011), and *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), respectively. Likewise, the standard of review pursuant to Fed. R. Civ. P. 56 is also well established and need not be repeated here. *See Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of . . . particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (internal quotation marks and

citation omitted).

## IV. <u>Discussion</u>

As an initial matter, because Koziol graduated from law school and, as he points out, spent "more than two decades" practicing law, (Compl. ¶ 40), he is undeserving of "the leeway afforded to legal neophytes," *NMD Interactive, Inc. v. Chertok*, No. 11 Civ. 6011, 2013 WL 1385213, at *12 (S.D.N.Y. Mar. 18, 2013), *vacated on other grounds by Streeteasy, Inc. v. Chertok*, 752 F.3d 298 (2d Cir. 2014). *See Parent v. New York*, 485 F. App'x 500, 502-03 (2d Cir. 2012) (declining to afford Koziol the "special solicitude" afforded to *pro se* plaintiffs).

### A. <u>Koziol's Motion For Disqualification of the Court</u>

Invoking due process principles, Koziol seeks the court's recusal.[7] (Dkt. No. 45, Attach. 1 at 2-6; Dkt. No. 45, Attach. 2 at 15, 25-30.)  Koziol's motion is denied.

"Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his

---

[7] Contemporaneous with the filing of his motion, Koziol filed a Petition for Mandamus with the Second Circuit, seeking substantially the same relief as he seeks here: the court's disqualification and various forms of declaratory and injunctive relief.  (*See generally* Dkt. No. 45, Attach. 2.)  He also sought a venue change to the Southern District of New York.  (*Id.*)  The Second Circuit denied the mandamus petition "because [Koziol did] not demonstrate[] that exceptional circumstances warrant the requested relief."  (Dkt. No. 46.)

impartiality might reasonably be questioned.'" *United States v. Basciano*, 384 F. App'x 28, 32 (2d Cir. 2010) (quoting 28 U.S.C. § 455(a)). A recusal decision rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). The standard for recusal is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id.* (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F. Supp. 196, 202 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992).

First, Koziol contends that recusal is mandated by the court's prior adverse rulings, including the court's denial of his application for a temporary restraining order by order to show cause, (Dkt. Nos. 6, 7), and its denial of his motion seeking either reconsideration of that decision or

14

certification to file an interlocutory appeal, (Dkt. Nos. 19, 44). (Dkt. No. 45, Attach. 2 at 15, 27-30.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney,* 645 F.3d 519, 520-21 (2d Cir. 2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). Equally unpersuasive is Koziol's insistence that recusal is necessary because the court has been critical of his consistently nonsensical and abusive submissions. (Dkt. No. 45, Attach. 1 at 3, 5; Dkt. No. 45, Attach. 2 at 25.) Indeed, "a judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008)

(quoting *Liteky*, 510 U.S. at 555).[8]

Second, Koziol argues that the Second Circuit's decision in *United States v. Cossey*, 632 F.3d 82 (2d Cir. 2011), compels recusal. (Dkt. No. 45, Attach. 1 at 2-4; Dkt. No. 45, Attach. 2 at 25-27.) In *Cossey*, the Second Circuit vacated a sentence imposed by this court on a defendant who pled guilty to one count of possession of child pornography, and held that this court improperly based the sentence on an unsupported theory that the defendant was genetically predisposed to recidivism. *See* 632 F.3d 82. In a Hail Mary attempt to explain how *Cossey* engenders bias here, Koziol claims that, "[t]his case focuses upon traits of a father and mother which refute disparate treatment under current law," and, as

---

[8] Koziol also takes issue with two aspects of the court's September 3, 2014 order denying his request to supplement his application for a temporary restraining order. (Dkt. No. 17; Dkt. No. 45, Attach. 2 at 27.) First, Koziol argues that the court "utterly ignored" his claims of mail tampering, which he describes, incredibly, as "ongoing crimes . . . at the core of [his] case." (Dkt. No. 45, Attach. 2 at 27.) In fact, in his thirty-page complaint, Koziol uses the phrase "mail tampering" exactly once, and in reference to "crimes committed by an ex-secretary," who is neither identified nor named as a defendant in this action. (Compl. ¶ 67.) Thus, his claims of "mail tampering" are tangential at best. Further, aside from the court's order denying his application for a temporary restraining order, which he claims he never received, (Dkt. No. 45, Attach. 2 at 27), Koziol appears to have received every other communication from this court. Second, Koziol seems to argue that the court improvidently denied his requests to seal the record and permit him to proceed under a fictional party name, in contrast to a previous decision from this District granting those requests. (*Id.*) Again, Koziol's accusations ignore reality. The court denied his request to seal documents because he failed to comply with this District's Local Rules, and the court also ordered him to comply with Local Rule 8.1 with respect to certain of his exhibits that contained personal identifiers. (Dkt. Nos. 7, 17.)

*Cossey* demonstrates, the court is "presumptively infected by an undisclosed bias which . . . leads [it] to the discredited sexist conclusion that mothers are genetically programmed to be superior nurturers and fathers accordingly resist their subservient roles as money givers." (Dkt. No. 45, Attach. 1 at 3; Dkt. No. 45, Attach. 2 at 26.) Simply put, Koziol's argument is rejected because *Cossey* and the matter now before the court could not be any more different, and to say that Koziol's assertions rely upon "remote, contingent, indirect or speculative" theories is an understatement. *Lovaglia*, 954 F.2d at 815.[9]

As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). Koziol's cross motion for recusal or disqualification of the court, (Dkt. No. 41), is therefore denied. Below, the court addresses the relevant arguments advanced by defendants in support of their motions, Koziol's

---

[9] Without any explanation, Koziol also claims that, because "Judge Sharpe's . . . son is employed for a federal prosecutor who testified at the subject Moreland Commission[,] . . . additional bias issues" are triggered. (Dkt. No. 45, Attach. 1 at 4; Dkt. No. 45, Attach. 2 at 27.) This argument is also rejected. Under 28 U.S.C. § 455(b)(5)(ii), recusal is appropriate when "a person within the third degree of relationship to [the judge] . . . [i]s acting as a lawyer in the proceeding." That is not the case here, as the court has no relation to any of the lawyers in this proceeding.

responses in opposition, and, finally, Koziol's remaining cross motion.

## B.   **Personal Involvement**

State Defendants contend that all claims against Judge Tormey and Justices Rose, Lahtinen, Spain, and Stein must be dismissed because Koziol has failed to assert any facts supporting their personal involvement. (Dkt. No. 23, Attach. 1 at 18-19.)  Christensen also advances this argument in her submissions, and seeks dismissal on the same grounds. (Dkt. No. 36, Attach. 1 at 5-8.)  The court agrees.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Dyno v. Vill. of Johnson City*, 240 F. App'x 432, 434 (2d Cir. 2007) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). Personal involvement "can occur by direct participation in the alleged violation, a supervisory official's failure to remedy a wrong, a supervisory official's creation of a policy or custom under which unconstitutional acts occurred, or through a supervisory official's gross negligence in managing his subordinates."  *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").  In order to prevail

18

on a § 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91 CIV. 8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), *aff'd*, 40 F.3d 1236 (2d Cir. 1994).

Here, Koziol has failed to allege personal involvement with respect to Justices Rose, Lahtinen, Spain, and Stein, who are each mentioned only once in the complaint. (Compl. ¶ 22.) Thus, because the court is left totally in the dark with respect to their wrongdoing, they are dismissed from this action. Next, with respect to Judge Tormey, all Koziol has alleged is that Judge Tormey assigned certain judges to his family law matters, (*id.* ¶¶ 82, 138), but he has failed to explain how those actions give rise to any cognizable constitutional or state law claim. Judge Tormey, therefore, is also dismissed as a defendant. Finally, with respect to Christensen, a supervisor for the Oneida County Support Collection Unit, all Koziol has alleged is that she aided Hawse-Koziol in "impair[ing] driving and employment liberties," "pursuant to an unlawful [support]

intercept." (*Id.* ¶¶ 25, 98, 100.)  These are entirely vague allegations, which leave the court with no understanding of the factual basis for the claims asserted against Christensen, and she is also dismissed from this action.  Accordingly, Christensen, Judge Tormey, and Justices Rose, Lahtinen, Spain, and Stein are dismissed for lack of personal involvement.

## C.    **Judicial Immunity**

Next, State Defendants argue that the claims asserted against Judge King and Magistrate Gorman in their individual capacities must be dismissed because they are entitled to absolute judicial immunity.[10]  (Dkt. No. 23, Attach. 1 at 6-12.)  Koziol counters that judicial immunity does not apply.  (Dkt. No. 42, Attach. 3 at 13-14.)  The court agrees with State Defendants.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted).  This immunity is "from

---

[10] Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities.  *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cnty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011).  As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities.  *See Ying Jing Gan*, 996 F.2d at 529.

suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). A judge is not entitled to this immunity, however, if he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Id.* at 12. In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

Here, Koziol's allegations against Judge King relate primarily to various custody and visitation orders that he issued in matters pending

before him.  (Compl. ¶¶ 108-12, 119-20, 127-28.)  Koziol also complains of the way that Judge King managed his courtroom during a hearing.  (*Id.* ¶¶ 130-37.)  This conduct is precisely the type that is protected by judicial immunity.  *See Davis v. Kushner*, No. 1:14-cv-00511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014) (holding that family court judge was protected by judicial immunity where the plaintiff alleged that the judge "denied him custodial and visitation rights [with his children] because he is a Muslim"); *Ezeh v. VA Med. Ctr., Canandaigua, N.Y.*, No. 13-CV-06563, 2014 WL 4897905, at *13 (W.D.N.Y. Sept. 29, 2014) (holding that "the conduct of a hearing, the consideration of evidence, and the rendering of a decision are all quintessentially judicial acts"); *Sargent v. Emons*, No. 3:13cv863, 2013 WL 6407718, at *7 (D. Conn. Dec. 9, 2013) (holding that judge was immune from suit where allegations in complaint stemmed "from orders issued by [her] during the pendency of the child custody dispute before her"), *aff'd*, 582 F. App'x 51 (2d Cir. 2014).  Although Koziol insists that these actions were taken in the absence of Judge King's jurisdiction, (Compl. ¶¶ 29-30, 124, 128), that is a legal conclusion, and simply reciting it does not make it so.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (noting that, in considering a motion to dismiss, courts

22

"are not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations" asserted in a plaintiff's complaint). Simply put, Koziol has not alleged any facts that would indicate that Judge King acted outside of his judicial capacity or in the absence of jurisdiction, and Judge King is therefore entitled to absolute judicial immunity.

Similarly, Magistrate Gorman is entitled to judicial immunity. Koziol's claims against Magistrate Gorman are largely predicated on various orders and decisions—seemingly related to Koziol's child support obligations—which Koziol describes as "unlawful." (Compl. ¶¶ 95-96, 103-04.) Koziol also appears to take issue with the fact that it was Magistrate Gorman who appointed Koslosky as Attorney for the Child for Koziol's children. (*Id.* ¶¶ 101, 105.) But these actions were taken directly in connection to matters that were before and assigned to Magistrate Gorman, and these are the types of acts that are inherently judicial. *See Bliven*, 579 F.3d at 210 (noting that "acts arising out of, or related to, individual cases before the judge are considered judicial in nature"); *Chestnut v. Gabler*, No. 06-CV-534E(F), 2007 WL 529556, at *2 (W.D.N.Y. Feb. 13, 2007) (holding that judge defendant was protected from suit by judicial immunity where the plaintiff challenged support

orders).  Further, Koziol does not even allege that Magistrate Gorman

acted in the absence of jurisdiction.  Magistrate Gorman, therefore, is also

entitled to absolute judicial immunity.

Finally, Justice Centra is also entitled to judicial immunity.  Koziol

alleges that Justice Centra "directed" an "ethics prosecution" against him

"using means outside of established channels and judicial scope,"

because Justice Centra "was offended by [Koziol]'s criticisms."  (*Id.* ¶¶ 40-

44.)  However, courts in this District have held that a justice's decisions

regarding disciplinary action "falls squarely within the judicial roles of the

[Appellate Division] justices."  *Koziol*, 2012 WL 4854589, at *6 (citing 22

N.Y.C.R.R. 100.3(D)(3) ("Acts of a judge in the discharge of disciplinary

responsibilities are part of a judge's judicial duties.")); *see Bliven*, 579 F.3d

at 210 (noting that "disbarring an attorney as a sanction for the attorney's

contumacious conduct in connection with a particular case" would be

considered an act "judicial in nature").  Accordingly, assuming that Koziol's

allegations against Justice Centra meet the basic pleading requirements,

Justice Centra is immune from suit.[11]

---

[11] Although Judge Tormey has already been dismissed for lack of personal
involvement, *supra* Part IV.B., the court notes that he would also properly be entitled to judicial
immunity for allegedly assigning Koziol's family law matters to certain judges who then

## D.    Quasi-Judicial Immunity

State Defendants similarly contend that Zayas and Duffy are immune from suit under the doctrine of quasi-judicial immunity.  (Dkt. No. 23, Attach. 1 at 12-13.)  Koziol does not appear to address this argument.  The court again agrees with State Defendants.

"The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.'"  *Feng Li v. Rabner*, No. 15-cv-2484, 2015 WL 1822795, at *4 (S.D.N.Y. Apr. 22, 2015) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)).  Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge."  *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger*, 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute

---

rendered decisions unfavorable to Koziol.  "[C]ourts have held that the assignment of cases is a judicial function and is therefore a protected act under judicial immunity."  *Neroni v. Coccoma*, No. 3:13-cv-1340, 2014 WL 2532482, at *7 (N.D.N.Y. June 5, 2014), *aff'd*, 591 F. App'x 28 (2d Cir. 2015); *see Zahl v. Kosovsky*, No. 08 Civ. 8308, 2011 WL 779784, at *9 (S.D.N.Y. Mar. 3, 2011) (holding that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

immunities." (citations omitted)).  Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction."  *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted)*.*  The scope of a judicial officer's jurisdiction, however,

> must be construed broadly in order to allow [him or] her to exercise [his or her] functions with independence and without fear of consequences[; m]ere evidence that an official's action was in error, was done maliciously, or was in excess of [his or her] authority does not undermine [a] claim to absolute immunity so long as it did not fall clearly outside all official authority.

*Id.* (internal quotation marks and citations omitted)*.*

Here, Koziol's claims against Zayas and Duffy—that they authorized and led "inquiries" of him and submitted a "'secret' report" opposing his reinstatement to the bar, (Compl. ¶¶ 69, 143-44, 146, 150)—are entirely related to their investigative roles as members of COPS, and the Second Circuit has "consistently extended quasi-judicial immunity to attorney disciplinary committees."  *Neroni v. Coccoma*, 591 F. App'x 28, 30 (2d Cir. 2015) (citing *Anonymous v. Ass'n of the Bar of City of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975)); *see Finn*, 592 F. App'x at 19 (affirming the district

court's holding that a member of a grievance committee was entitled to quasi-judicial immunity for her investigation of a misconduct complaint lodged against the plaintiff).  Zayas and Duffy, therefore, are entitled to quasi-judicial immunity.

## E.    Eleventh Amendment Immunity

State Defendants next argue that Koziol's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment.  (Dkt. No. 23, Attach. 1 at 15-18.)  The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit.  *See V.A. Office for Prot. & Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (citation omitted).  "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.*  Generally, New York, its agencies, and its agents enjoy sovereign immunity from suit in federal court under the Eleventh Amendment.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).  Under the doctrine established in *Ex Parte Young*, however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their

official capacities, provided that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (internal quotation marks and citation omitted).

Here, while Koziol seeks a judgment declaring unconstitutional § 240(1) of the New York Domestic Relations Law and §§ 8.4(d) and (h) of the New York Attorney Rules of Conduct—and this injunctive relief would be appropriately classified as prospective—the 1996 Congressional amendments to § 1983 bar injunctive relief against a judicial actor "*unless* a declaratory decree was violated or declaratory relief was unavailable or *unless* the judge's conduct was clearly in excess of the judge's jurisdiction." *Hodges v. Mangano*, 28 F. App'x 75, 77 (2d Cir. 2002) (internal quotation marks and citation omitted); *see McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010). Koziol neither alleges that a declaratory order was violated nor that declaratory relief was unavailable; and, as discussed above, State Defendants did not act in excess of their jurisdiction. *See McKnight*, 699 F. Supp. 2d at 523. Thus, State Defendants are also immune from suit to

the extent that they are sued in their official capacities.[12]  Accordingly, given that all State Defendants have been dismissed in both their official and individual capacities, either based on lack of personal involvement or immunity, no further discussion of Koziol's claims against them is warranted.[13]

_____

[12] The court also notes that declaratory relief, while equitable in nature, is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective."  *Kent v. New York*, No. 1:11-CV-1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012).  Here, much of the equitable relief that Koziol seeks is retrospective, and does not fall within the *Ex Parte Young* exception.  (*See generally* Compl. at 30 (requesting "[a] permanent injunction . . . on custody/support orders and license suspensions" and "[a] judgment declaring unconstitutional . . . the terms of suspension upon [his] law license").

[13] The court does note, however, that Koziol takes great issue with previous courts dismissing his claims based on the abstention doctrine articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), and argues that the Supreme Court's recent decision in *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013) proves that abstention was inappropriate.  (Dkt. No. 42, Attach. 3 at 1, 14-20.)  At least with respect to Koziol's claims regarding his ongoing disciplinary proceedings, the court disagrees, and those claims may still properly be dismissed based on *Younger*.  In *Younger*, the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate.  *See* 401 U.S. at 54.  That rule was later extended to claims for declaratory relief and underlying state civil actions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982)*; Hansel v. Town Court for the Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995).  In *Sprint*, however, the Supreme Court reaffirmed that abstention is appropriate only in three categories of state proceedings: (1) where federal jurisdiction would intrude on pending state criminal proceedings; (2) in civil enforcement proceedings that are "akin to criminal prosecutions"; or (3) in "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  134 S. Ct. at 588, 591 (internal quotation marks and citations omitted).  *Sprint* did not, however, as Koziol suggests, disrupt the notion that abstention from ongoing state disciplinary proceedings is proper, as pending attorney disciplinary proceedings are among those "'civil enforcement'" proceedings expressly authorized by *Sprint*.  *Id.* at 592 (citing *Middlesex*, 457 U.S. at 433-34); *Neroni*, 595 F. App'x at 94-95.  "As the Supreme Court explained in *Sprint*, [a] state-initiated disciplinary proceeding[ ] against a lawyer for violation of state ethics rules, substantiated by a state investigation and the issuance of a formal complaint, was a noncriminal proceeding[ ] bear[ing] a close relationship to proceedings

## E.  State Action

Next, Hawse-Koziol and Koslosky seek dismissal of Koziol's claims asserted against them on the theory that they are not state actors, and on the grounds that, to the extent that Koziol has attempted to allege that they conspired with state actors, those claims also fail.  (Dkt. No. 25, Attach. 57 at 5-9; Dkt. No. 39 at 3-4.)  In response, Koziol simply reasserts the same conslusory statements made in his complaint—that Hawse-Koziol and Koslosky conspired with each other and state actors to violate his constitutional rights.  (Dkt. No. 45, Attach. 1 at 7-8.)  The court agrees with Hawse-Koziol and Koslosky that they are neither state actors nor co-conspirators with state actors.

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citation omitted).  In order to prove a § 1983 conspiracy claim, a

---

criminal in nature, such that it merited deference under Younger."  *Torres v. DeMatteo Salvage Co., Inc.*, 34 F. Supp. 3d 286, 291 (E.D.N.Y. 2014) (internal quotation marks and citations omitted); *see Frelix v. New York*, No. 15cv0465, 2015 WL 585857, at *2 (S.D.N.Y. Feb. 4, 2015).  Because Koziol's disciplinary proceeding is the type of proceeding in which the *Younger* abstention rule still applies, and he has not adequately alleged why this court should intervene, the court declines to do so.  Therefore, the court also dismisses Koziol's federal claims for injunctive and declaratory relief related to his disciplinary proceedings under the *Younger* abstention doctrine.

plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324-25. However, "[a] merely conclusory allegation that a private [individual] acted in concert with a state actor does not suffice to state a § 1983 claim against the private [individual]." *Id.* at 324 (citation omitted). Instead, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

Here, despite his vehement contentions to the contrary, Koziol has failed to establish that Kosolsky and Hawse-Koziol were state actors for § 1983 purposes. With respect to Koslosky, the court-appointed attorney for Koziol's children, it is black letter law that "[p]rivate law firms and attorneys . . . are not state actors for section 1983 purposes." *Jaffer v. Patterson*, No. 93 Civ. 3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 419 (S.D.N.Y. 2004) ("[P]rivate attorneys and law firms . . . do not act under color of state

31

authority." (citation omitted)).  More to the point, it is equally well-settled that, "although appointed by the state, an attorney for the child[] or law guardian is not a state actor because he . . . must exercise independent professional judgment on behalf of the clients [he] represent[s]."  *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd* 485 F. App'x 500 (2d Cir. 2012); *see Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court and the fact that she was paid by state funds).  Thus, Koslosky is not a state actor for § 1983 purposes.

Further, with respect to Hawse-Koziol, Koziol's allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions," at most, amount to a misuse of the family court system. (Compl. ¶¶ 36, 76, 108, 111.)  However, mere use, and even misuse, of the state courts does not turn private parties into state actors.  *See Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983." (internal quotation marks and citation omitted)); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984)

(dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to a § 1983 action).  Hawse-Koziol, therefore, is not a state actor for § 1983 purposes.

Finally, Koziol also has failed to allege facts giving rise to a conspiracy claim.  First, Koziol seemingly attempts to allege that Koslosky and Hawse-Koziol conspired against him to deprive him of parenting rights by "lodg[ing] false claims" and filing "specious petitions," (Compl. ¶¶ 76-77, 108), but it is beyond cavil that two private citizens, acting together, do not give rise to a conspiracy.  *See Ciambriello*, 292 F.3d at 324-25 (noting that, to prove a conspiracy claim, a plaintiff must allege "an agreement between a state actor and a private party").  Further, any allegations that Hawse-Koziol conspired with state actors by providing information to Judge King regarding Koziol's website and "monitoring [Koziol's] protected activities," are equally meritless.  (Compl. ¶¶ 113, 115; Dkt. No. 45, Attach. 1 at 7-8.)  "[F]urnishing information to [state actors] does not by itself make someone a joint participant in state action under Section 1983."  *Drayton v. Toys 'R' Us Inc.*, 645 F. Supp. 2d 149, 163 (S.D.N.Y. 2009).  Simply put, Koziol's complaint is riddled with "conclusory, vague, [and] general allegations of a conspiracy," and such allegations "cannot

withstand a motion to dismiss." *Martinez v. Queens Cnty. Dist. Attorney*, 596 F. App'x 10, 13 (2d Cir. 2015) (internal quotation marks and citations omitted). Accordingly, Koziol's § 1983 claims against Koslosky[14] and Hawse-Koziol are dismissed.[15]

## F. State Law Claims

Koziol's sixth cause of action asserts a *prima facie* tort claim under New York common law. (Compl. ¶¶ 174-75.) Having dismissed all of his

---

[14] Even if the court were to find that Koslosky was a state actor, he would be immune from suit under the theory of quasi-judicial immunity. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 528 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Yapi v. Kondratyeva*, 340 F. App'x 683, 684-85 (2d Cir. 2009); *Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) (holding that guardian ad litem received absolute immunity in acting as an "actual functionary or arm of the court"); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, at *11-12 (S.D.N.Y. Aug. 19, 2004) (applying New York's quasi-judicial immunity to law guardians in a § 1983 action).

[15] The court also notes that, citing *Parent v. New York*, Koslosky and Hawse-Koziol also contend that Koziol's claims are barred by res judicata. (Dkt. No. 25, Attach. 57 at 3-5; Dkt. No. 39 at 3-4.) As noted above, Koziol's complaint is difficult to comprehend, but to the extent that he seeks to reassert the same claims that were raised and decided in *Parent*, the court agrees that dismissal on res judicata grounds—and more specifically, claim preclusion—is also appropriate. "Res judicata embraces two concepts: issue preclusion (also known as collateral estoppel) and claim preclusion." *Rivera v. City of N.Y.*, 594 F. App'x 2, 5 (2d Cir. 2014). In order for claim preclusion to apply, three requirements must be met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] or those in privity with [him]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Notably, "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999). In *Parent*, the court dismissed Koziol's claims against Koslosky and Hawse-Koziol because they are not state actors and because Koziol failed to state a claim that they conspired with state actors to deprive him of a constitutional right. 786 F. Supp. 2d at 538-40, 543. As noted above, this decision was affirmed by the Second Circuit. *See Parent v. New York*, 485 F. App'x 500 (2d Cir. 2012). Thus, to the extent that Koziol asserts the same claims against Hawse-Koziol and Koslosky as he did in *Parent*, those claims are also barred by res judicata.

federal claims, the court declines to exercise supplemental jurisdiction of Koziol's remaining state law claim.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge*, No. 9:09-cv-1106, 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)).  Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal.  *See Kolari*, 455 F.3d at 122. Accordingly, the court declines to exercise jurisdiction over Koziol's state law claim and it is dismissed from this action.

## G. <u>Leave to Amend</u>

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).  As an initial

matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Koziol any special solicitude.  Moreover, Koziol has not requested leave to amend in any of his submissions.  And, in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Koziol's complaint is dismissed with prejudice.

## H.   Koziol's Cross Motion

Given that the court has granted defendants' dispositive motions, (Dkt. Nos. 23, 25, 36, 39), and dismissed Koziol's complaint, his cross motion for a preliminary injunction, (Dkt. No. 41), which seeks essentially the same relief as that requested in his complaint, is denied as moot.

## I.   Sanctions

Finally, separate from his summary judgment motion, Koslosky has moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that the court should impose sanctions upon Koziol and issue an order enjoining him from commencing any further litigation without prior leave of the court, in order to deter Koziol from continuing to file harassing and frivolous lawsuits against him.  (Dkt. No. 27; Dkt. No.

27, Attach. 56 at 2-13.) In response, Koziol reargues the merits of his claims, reproduces, verbatim, several paragraphs of previous submissions, and argues that, if anyone should be sanctioned, it is Koslosky's attorney. (Dkt. No. 45, Attach. 1 at 8-19.) The court agrees with Koslosky that sanctions are warranted.

Under Fed. R. Civ. P. 11(b)(2),

> By presenting to the court a pleading, written motion, or other paper . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or frivolous representations to the court in violation of Rule 11(b). *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). "A claim is legally frivolous for Rule 11 purposes if, under a standard of objective reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Friedman v. Self Help Cmty. Servs.*, No. 11-CV-3210, 2015 WL 1246538,

at *23 (E.D.N.Y. Mar. 17, 2015) (citing *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)). Procedurally, "[a] motion for sanctions must be made separately from any other motion," Fed. R. Civ. P. 11(c)(2), and "the motion must first be served upon the offending party, who is then given [twenty-one] days to remedy the sanctionable conduct before the motion may be made to the court," *Finnan v. Ryan*, No. 8:08-CV-259, 2008 WL 4891162, at *7 (N.D.N.Y. Nov. 7, 2008).

Here, as an initial matter, Koslosky complied with the procedural requirements of Rule 11(c)(2). Indeed, Koslosky served his motion for sanctions upon Koziol more than twenty-one days prior to filing it, and requested that Koziol withdraw his complaint. (Dkt. No. 27, Attachs. 54, 55.) After Koziol refused to withdraw his complaint, Koslosky filed his motion for sanctions separate from his motion for summary judgment. (Dkt. No. 27.) Substantively, Koslosky has also presented compelling arguments that support a finding of frivolousness and the imposition of sanctions. First, as noted above, this is the fourth federal complaint that Koziol has filed. *See supra* note 3. In each of these cases, Koziol has raised similar constitutional challenges to New York's Domestic Relations

38

Law and New York's Rules of Professional Conduct, and named many of the same defendants. *See supra* note 3. Moreover, Koziol's claims against the defendants in those prior cases were dismissed on many of the same grounds as his claims were dismissed here—sovereign and absolute immunity, *Younger* abstention, lack of personal involvement, and failure to allege state action. *See supra* note 3. In one of his prior cases, the court granted one defendant's motion for attorneys' fees, and, in so doing, found that Koziol's complaint was "without legal foundation, and . . . baseless." *Koziol v. Peters*, No. 6:12-CV-823, 2012 WL 5986574, at *2-3 (N.D.N.Y. Nov. 29, 2012). In addition, Koslosky has cited several other actions and petitions filed in state court in which Koziol has raised the same constitutional claims, also without success. (*See, e.g.*, Dkt. No. 27, Attachs. 4-5; Dkt. No. 27, Attach. 12; Dkt. No. 27, Attach. 28 at 10-11 (stating that Koziol's "bare assertions that the Family Court proceedings have been biased against men is not sufficient to merit constitutional analysis; indeed, such analysis is impossible because of the vague and conclusory nature of the allegations"); Dkt. No. 27, Attach. 42 at 4 (noting that Koziol "has utterly failed to articulate how his constitutional rights have been violated and the [r]ecord . . . contains a complete dearth of

information from which one could begin to make a thoughtful decision as to the constitutionality of the statutes asserted to be at issue, or as to any of [Koziol's] other asserted constitutional infirmities").)

Nevertheless, Koziol has relentlessly pressed on, and continues to file lawsuits in this District, asserting claims that he should know, by now, are without merit, and naming defendants who he should know, by now, are immune from suit. This case is no different, and by signing the complaint, Koziol made "false, misleading, improper, [and] frivolous representations to the court" in violation of Rule 11(b), thus warranting sanctions pursuant to Rule 11(c). *Williamson*, 542 F.3d at 51. Therefore, pursuant to both Fed. R. Civ. P. 11(c), and the court's inherent power to impose sanctions, *see Marx v. Gen. Revenue Corp.*, 133 S.Ct. 1166, 1175 (2013), Koziol is sanctioned in the amount of $1,000, and ordered to pay this penalty to Koslosky as part of his attorneys' fees. *See* Fed. R. Civ. P. 11(c)(4); (Dkt. No. 27, Attach. 56 at 12 (noting that Koslosky has "thus far expended over $60,000 in unwarranted legal fees defending against [Koziol]'s baseless . . . [l]awsuits").) Although the court notes that a full award of reasonable costs and attorneys' fees would also constitute an appropriate sanction here, *see* Fed. R. Civ. P. 11(c)(4); 42 U.S.C.

§ 1988(b), it is reluctant to impose those sanctions without documentation upon which the court may quantify those fees. Of course, Koslosky—and all other represented defendants, as the prevailing parties—are free to seek attorneys' fees by subsequent motions.

Finally, the court notes that Koslosky, as part of his motion for sanctions, has sought what is essentially an anti-filing injunction. (Dkt. No. 27, Attach. 56 at 8-13.) While the court finds Koslosky's arguments persuasive, the court has a separate process for issuing orders of this sort. Thus, Koslosky's request is taken under consideration and the court will separately decide whether an anti-filing injunction is warranted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that State Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Christensen's motion for judgment on the pleadings (Dkt. No. 36) is **GRANTED**; and it is further

**ORDERED** that Hawse-Koziol's motion for judgment on the pleadings (Dkt. No. 39) is **GRANTED**; and it is further

**ORDERED** that Koslosky's motion for summary judgment (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that Koziol's cross motion for recusal and/or disqualification of the court and for a preliminary injunction (Dkt. No. 41) is **DENIED**; and it is further

**ORDERED** that Koslosky's motion for sanctions pursuant to Fed. R. Civ. P. 11 (Dkt. No. 27) is **GRANTED** and Koziol is directed to pay a penalty of $1,000 to Koslosky as part of Koslosky's attorneys' fees; and it is further

**ORDERED** that Koziol's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court